SUPERINTENDENTS OF THE POOR OF NEWAYGO COUNTY V. SWAN NELSON.

*Pauper—Order for removal to Michigan—Support—Civil action.*

1. An order of an Iowa court made pursuant to its statute,[1] directing the removal of a pauper, who has not gained a legal settlement in that state, to Michigan, her former place of residence, is no justification to the person who executes it, if such removal is in violation of the statutes of this State.

2. A suit to recover for the support of a pauper illegally removed from another state into a county in Michigan is properly brought in the name of the superintendents of the poor of the county, but will not lie until after the pauper is adjudicated such, nor until expenses for such support have been paid, or the liability therefor incurred, by such superintendents.

3. A conviction for a violation of the provisions of How. Stat. § 1776, must precede a suit to recover the forfeiture of $50 provided for in said section, and until the defendant is so convicted, and required to indemnify the county against liability for the pauper's support in case he fails to remove the pauper from the State, he is under no obligation to give said bond, nor will a suit lie against him for such non-removal.

Error to Newaygo. (Palmer, J.) Argued February 13, 1889. Decided June 14, 1889.

[1]McClain's Stat. (Iowa) § 1354—"A person coming from another state, and not having become a citizen of nor having a settlement in this state, falling into want and applying for relief, may be sent to the state whence he came, at the expense of the county, under an order of the circuit court or judge; otherwise he is to be relieved in the county where he applies."

Case for support of pauper claimed to have been illegally brought into this State, etc. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*George Luton* (*E. L. Gray*, of counsel), for appellant.

*W. D. Fuller* (*J. H. Standish*, of counsel), for defendant.

SHERWOOD, C. J.   This suit was commenced in the county of Newaygo against the defendant, as he was about to leave the State and return to his home in the state of Iowa, to recover for support furnished to a pauper, who had been brought into the county by the defendant from Iowa, with the intent, as is alleged, to make the county of Newaygo chargeable for her support.   The declaration reads as follows:

"The superintendents of the poor of the county of Newaygo and State of Michigan, plaintiffs in this suit, by George Luton, their attorney, and prosecuting attorney of the said county of Newaygo, complain of Swan Nelson, defendant in this suit; the said Swan Nelson having been duly summoned to answer the said plaintiffs of a plea of trespass on the case.

"For that the said defendant, heretofore, to wit, on the seventh day of December, A. D. 1887, did bring, fetch, carry, and remove one Margaret Boss, a poor and indigent person, to wit, a pauper, from the county of Pocahontas, in the state of Iowa, into the said county of Newaygo, with intent to make the said county of Newaygo maintain, support, and be chargeable with the maintenance and support of the said Margaret Boss as such pauper so removed by the said defendant from the said county of Pocahontas; and after the removal of the said pauper into the said county of Newaygo, at, to wit, the township of Garfield, in said county of Newaygo, requested the said plaintiffs to take charge of, maintain, and support the said Margaret Boss, the pauper aforesaid, at the proper charge and expense of the said county of Newaygo; and the said defendant did leave the said Margaret Boss in the said county of Newaygo as such pauper, with intent that she be cared for by said plaintiffs at the charge and expense of the said county of Newaygo, after the said defendant had been requested by said plaintiffs to remove, carry, and take back the said Margaret Boss to the

said state of Iowa, and to remove her from the said State of Michigan, and which the said defendant wholly neglected and refused to do.

"And that the said Margaret Boss, after such neglect and refusal on the part of the said defendant, not having any means of any kind whatsoever with which to support herself, applied to said plaintiffs for support and maintenance, to be paid for and become chargeable upon the said county of Newaygo, after she had been so removed as a pauper by the said defendant from the said county of Pocahontas in the state of Iowa; and that she as such pauper, upon the application so made by her and said defendant, the plaintiffs were compelled to and did take charge of her, the said Margaret Boss, she being the such poor and indigent person as aforesaid, and were obliged to and did remove the said Margaret Boss to the said poor-house of the said county of Newaygo, where she has ever since and is now and liable to be, for the period of her natural life, supported, aided, and maintained by the said county of Newaygo, owing to the wrongful act of said defendant in so bringing, carying, and removing said pauper into the said county of Newaygo, be and remain a charge thereon.

"*Whereas*, in truth and in fact, the said Margaret Boss never became nor was a charge upon the said county of Newaygo, nor any township therein, as a poor and indigent person or otherwise, and the said defendant was often requested to remove said pauper from said county of Newaygo and State of Michigan, but has wholly neglected and refused to do, and still neglects and refuses to do so, to the damage of said plaintiffs ten thousand dollars, and therefore they bring suit.

"GEORGE LUTON, Plff's Atty.

"E. L. GRAY, of Counsel."

To the declaration the defendant pleaded the general issue, and gave notice that he would show in his defense that, if he removed the pauper named from Iowa into Newaygo county, he had the right so to do.

That prior to December, 1886, she resided with her child in said county, where she was abandoned by her husband, and that in that month she was furnished with money to transport them to the state of Iowa, where she went about that date, and before gaining a settlement in that state, under the laws thereof, she came to want, and was obliged to apply to

the proper authorities there for assistance, and did so, and such proceedings were had as resulted in the district court of Pocahontas county making an order for the removal of the said pauper to Newaygo county, where it was adjudged her residence at that time was, and that such removal should be at the expense of the county in Iowa.

That said order required the removal to be made on or before January 1, 1888, and was delivered to the defendant, a supervisor of the county, and by virtue thereof he removed said pauper to said Newaygo county, and tendered her to one of the superintendents of the poor of said county; that he paid all expenses for her removal, and left her in said county; that he left her at the place of her former home in said county of Newaygo, which he claims was her legal residence, and paid all her expenses up to the time he left, and that the plaintiff subsequently sent her to the poor-house in said county of Newaygo.

The cause was tried before Judge Palmer, without a jury, who, after hearing the testimony, gave judgment for the defendant.

No findings appear in the record, except that contained in the judgment rendered, but all the testimony is given, which was all offered by the plaintiff.

Counsel, in making his opening, read the declaration, and claimed upon the facts therein stated the plaintiff would be entitled to recover, and therefore commenced to make his proofs.

Counsel for defendant objected to taking any testimony in the case, for the following reasons:

"1. The declaration fails to state a cause of action against said defendant.

"2. If the declaration states a cause of action, the suit should have been brought in the name of the county of Newaygo, or of the board of supervisors in its behalf.

"3. A complete statutory remedy is provided by How. Stat. §§ 1776, 1777, for the wrongs charged in plaintiffs' declaration."

The court overruled the objection, and the plaintiff proceeded in putting in its testimony.

Charles Mitchell was sworn, and testified that in the fall of 1886 he sent the pauper, whose name is Mrs. Boss, to her brother in Pocahontas county, in the state of Iowa. Up to that time she had lived in Newaygo county, and had never been a pauper, nor a county or a township charge. She resided in the town of Goodwell. She lived with him some of the time, and her brother-in-law took care of her part of the time. He lived in Goodwell also. He went to Iowa in the spring, and Mrs. Boss went in the fall, of 1886, and her brother furnished her the money to go with.

Several other witnesses were sworn for plaintiff, whose testimony showed that, before going to Iowa, Mrs. Boss had never received any aid from the town or county as a poor or indigent person, and she never applied for any, but she worked some, and was able to work and support herself. Among the witnesses sworn was the supervisor of the town where she lived, and the superintendent of the poor.

The latter testified that on the fifth of December, 1887, the defendant called on him, and informed him that he had a pauper whom he had brought from Iowa under the order of the district court there, and presented the order, and that he had left her and her child at the depot in Newaygo; that she had been adjudged a pauper by the court in Iowa.

That when defendant left for Iowa he left Mrs. Boss and her child with a Mrs. Jarse, who notified the witness that they had been left there without means, and Mrs. Jarse asked him to take them, and the superintendent took them to the county poor-house, where they have ever since remained.

Witness further testified that Mrs. Boss was not capable of taking care of herself at that time, and that she is a confirmed pauper, and that Nelson told him she had been adjudged a pauper; that it is worth about $150 a year to sup-

port Mrs. Boss, and $1.50 per week to support her child; and that it will be about one year before the child will be able to take care of herself, and that Mrs. Boss never will be. He also testified that the county had supported her 37 weeks, and that it was worth $111, and worth half that sum to support her child.

The foregoing testimony, relating to Mrs. Boss being a pauper, and to the worth of her support and the support of her child, was objected to by counsel for defendant as incompetent and immaterial, for the reason that the declaration does not disclose a cause of action.

Counsel for the plaintiff then moved to amend his declaration by inserting after the words " Margaret Boss," wherever they appear therein, the name of her child, and the court declined to grant the motion.

The supervisor testified that Mrs. Boss was not a pauper; was not a pauper when she went to Iowa, nor had she been prior thereto; and could have supported herself by her work if she had desired to, and she worked out part of the time. Her brother-in-law took care of her some until he went to Iowa.

When defendant asked plaintiff to receive Mrs. Boss and her child, the superintendent refused to receive her. He claimed defendant was liable for bringing a pauper within the county, and had defendant arrested three times under the statutes relating to that subject, but these prosecutions failed.

The foregoing is the substance of all the testimony given, and when it was closed the defendant's counsel moved for judgment in his favor of no cause of action, for the reasons stated in his objection made to the admission of any testimony on the part of the plaintiff, with the result hereinbefore stated.

By statute the superintendents of the poor have charge of all the poor " who may be" in their county (How. Stat. §

1759), and it is their duty to cause them to be maintained at the place designated by the board of supervisors, and if no place has been designated, or poor-house erected, they may designate the place, and lease property for that purpose. See first subdivision of same section. They may also draw upon the county treasurer for such necessary expenses as may be incurred for that purpose. See seventh subdivision of same section.

The superintendents of the poor in this State are a corporation by that name, and by statute are given the usual powers of a corporation for public purposes. How. Stat. § 1758. Among these is the right to sue and be sued.

The superintendents of the poor of a county from which a pauper has been improperly removed into another county, with the intent to charge wrongfully the liability for his or her support, may be sued by the superintendents of the latter for such support. See How. Stat. § 1770.

Section 1776, How. Stat., provides that—

"Any person who shall bring or remove, or cause to be brought or removed, any poor or indigent person, from any place without this State into any county within it, with intent to make such county chargeable with the support of such pauper, shall forfeit and pay fifty dollars, to be recovered before any justice of the peace of the county into which such pauper shall be brought, or in which the offender may be, and shall also be obliged to convey such pauper out of the State, or support him at his own expense."

The next section provides that the justice or court before whom the offender shall be convicted for a violation of the preceding section may require him, if he fail to transport the pauper out of the State, to give satisfactory security, within a reasonable time, to pay to the county all charges and expenses which have been or may be incurred in the support of such pauper, and, if such person or offender shall neglect or refuse to give the required security, it then becomes "the duty of the justice or court to commit him to the county jail for a term not exceeding three months."

It is claimed that these provisions of the statute authorize the proceedings in question against the defendant, and that judgment should have been given for the plaintiff.

I think the fact that Mrs. Boss was a pauper sufficiently appears, as well as the fact that she was brought into Newaygo county by the defendant with the intent of making her support chargeable to the county.    The direction of the district court in Iowa to defendant to thus bring her here cannot be regarded as any legal justification for defendant's so doing.    And I further think that, were it not for the fact that Mrs. Boss' indigent condition is admitted by the defendant, an adjudication that she is a pauper would have been necessary before plaintiff could have brought any suit for her support.

I have no doubt but that the suit may be brought in the name of the superintendents of the poor. The subject is one over which the plaintiff has complete control, and whatever sums may be recovered are to be paid to the county treasurer and credited to the poor-fund.

But I have been unable to find any statute making the defendant liable to plaintiff or the county until expenses for support have been paid, or the liability therefor incurred, by the plaintiff.

In the present case the suit was commenced on the nineteenth of December, 1887, and the pauper was brought into the county only 12 days previous, and up to the time of bringing this suit defendant paid all of her expenses.    Certainly no liability of plaintiff had accrued up to that time.

This suit is not brought to recover the forfeiture of $50, provided for by the statute for bringing the pauper into this State.    That could only be claimed of defendant after he had been convicted (How. Stat. § 1776), and which had never occurred.    It is, however, claimed by counsel for plaintiff that the defendant is liable in case he fails to indemnify the

county against liability for the pauper's support, and that he is liable in this action for her prospective support. In this case no such adjudication for indemnity was made or indemnity required of defendant, and the defendant was under no obligation to give the indemnity until judicially required, and the amount fixed by the court. And it will be noticed that it is only when the defendant refuses to remove the pauper from the State that he may be made liable for her support, and whenever he causes such removal to be made his liability ceases. Such being the case, it would be most unjust to give plaintiff a judgment against the defendant for such prospective support. I cannot believe the Legislature ever intended that to be done. Such being the views taken of the several statutes before referred to, we are unable to discover any ground upon which a recovery can be had in this action, and the judgment rendered at the circuit must be affirmed.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred.

MORSE, J., concurred in the result.